Our next case for argument is 23-2110, Dolby Laboratories v. Unified Patents. Counsel, please proceed. Thank you, Your Honor. May it please the Court. Under 312A2, Dolby is entitled to know whom it has prevailed against. The Board refused to make that finding and deprived Dolby of its basic statutory right. That was error. Section 312A states that the Board may consider the petition only if it identifies all real parties and interests. In SAS, the Supreme Court held that the Director is required to consider the petition post-institution and through to final written decision. 312A2 thus governs the Board's conduct. I think the hard thing is you think you have an informational right. I don't see this as an informational statute. Even if you were right and you had some informational right, I don't see the downstream consequences that you need to establish, that I believe you need to establish under TransUnion. So why don't you address that? Yes, Your Honor. So with respect to the informational right, the Board itself has recognized that Section 312A2 provides important notice functions to patent owners. And the statute 312A confers. So what are the important informational rights? Tell me what they are. The right to know who the parties are. Why? Why is it important to you? What does it matter? Same as very similar to Federal Rule of Civil Procedure 17A. No. Tell me why it matters in this case. Well, first, it matters for purposes of enforcing potential estoppel down the road. You can do that down the road. That has nothing to do with this case. Down the road is when you assert estoppel. You don't assert estoppel in this case that works down the road. You assert it down the road. So down the road, you can say who is estopped or who you think ought to be estopped. Your Honor, there are actually significant problems with that that make it such that this is the proceeding where the real parties and interests should be identified and not future proceedings. Let me just demonstrate that to you by putting ourselves in the position where one of these nine entities, which I can't name because that's sealed, has filed an IPR petition against the same patent. At that point in time, under your description, we would be dealing with estoppel for the first time. Dolby would not even know that that entity that filed the IPR is one of the nine because that's been sealed. Now, let's say Dolby hypothecates maybe you're one of the nine and somehow finds that out. Dolby would need to get discovery about the evidence that was presented and gathered in this IPR. There are no other IPRs pending. There are no potential lawsuits that we've been made aware of. This has not been asserted. There's not even a colorable threat of infringement of any kind that's been lobbied against anyone. So it's hard for me to imagine that the PTO should be put in the position of having to conduct RPI-type discovery hearings for the possibility that maybe down the road you all will seek to assert this patent against somebody or somebody will seek to pursue another IPR against it. Well, that's the exact logic that was rejected in SAS by the Supreme Court, Your Honor. And so in SAS, the issue was that, and this happened to many petitions, there were some meritorious arguments and grounds presented and there were some that were clearly not meritorious and not worth considering. This has nothing to do with merit. You won. In SAS, different question. It would have changed the outcome. Nothing about you finding out who those RPIs are here changes the outcome in this case. It does change the outcome of who this case binds per the decision and the judgment of this IPR. That's your downstream argument. Your Honor, Congress mandated... Right, but aren't those who it binds, that's the downstream consequence for you, correct? That's one downstream consequence, yes. So, I mean, they're basically in-stream consequences and downstream consequences of being an RPI, right? I mean, if an IPR is going to proceed, if there was a person that was identified as a real body of interest, that's going to impact how things are going to proceed. And as I understand the board's procedure, it's designed to ask the question and answer it, are there going to be any in-stream problems here? So, I mean, the regulation of the statute has two beneficiaries. One is the patent office to be able to conduct a proper IPR and one are the downstream consequences to the patentee. So, like, what does the patentee get out of this if it goes in one of these things and wins, right? So, as I read it, all the rule that they're enforcing does is we decide whether or not the in-stream consequences are there. If we do, we're going to have to deal with it and identify these people. Otherwise, we don't. And that's just not discretion that they have under the statute. But why not? Because 312A says that the petition may not be considered or it may be considered only if, and that's the heading of 312A. Well, we've already, I mean, Quozo went by that. Petition identifies in writing the particularity of the claim challenge. That's a requirement. And, Your Honor, that's an important point because what Quozo addressed. But the Supreme Court's already blown by that as a real requirement. No, I disagree, Your Honor, because in SAS, the Supreme Court relied on 312A-3 in addition to 318A in emphasizing that when the board in its final written decision violates Congress's mandate that it is the petition that governs the proceeding, that that is revealable and appealable under 314D. And this court has repeatedly found a violation of the board's decision on final written decision based on 312A-3. But this is your reviewability argument. This doesn't have anything to do with injury in fact. I was addressing Judge Clevenger's question. Okay, you pivoted. That's fine. I missed it. Could you address some of the Supreme Court opinions, the relevant ones, where the Supreme Court concluded there was a clear sign in the statute that a violation of the right to information there would entitle you to file a lawsuit. The way this particular statutory scheme was structured, it seems to be more just about are these claims patentable or unpatentable? And it's not clear to me when I look at those Supreme Court cases why and the nature of what was at stake in those cases why this real party and interest designation, if it's not fully ventilated, then therefore that gives you an automatic right to go to court and be designated as having some legal injury. Yes, Your Honor. Okay, with respect to the Supreme Court cases, Aikens and Public Citizen and then Spokio that talks about that, what they stand for is the proposition that the violation of a statutory right alone is enough to constitute injury in fact.  It depends on the circumstances. And then those circumstances in Public Citizen and Aikens, the Supreme Court said yes, but as I was trying to suggest in my question, the statute here feels different than what was at stake in those two cases. Your Honor, if this question is directed to the notion of a need for downstream consequences. No, we're just talking about whether this lack of access to certain kinds of information itself can be deemed a so-called informational injury that warrants getting into court. The statute 312A2 requires disclosure and identification of all real parties and interests. And Congress was very explicit about that. Now, if some would think that that's not so important or it's cumbersome or it's inefficient, then that's a discussion to bring up with Congress. Because SAS tells us very clearly that efficiency rationales cannot trump the express statutory language. And that was exactly what the director tried to do in SAS. The director in SAS said, well, these grounds I didn't institute on are meritless, so why should I waste my time addressing them beyond institution? And the Supreme Court said, because Congress told you to. And that is the exact situation here, Your Honor. So 312A2 on its terms provides the right to the patent owner to know all real parties and interests in the proceeding. And that right is not limited to institution. That language says consider. And consider is what the director does all the way through final written decision. It's what SAS instructed the director to do all the way to final written decision. And so as to standing, Judge Moore, first of all, it's the statute that confers the right as to which we've been injured. And secondly, we don't think we need downstream consequences because that would be inconsistent with Haven's Realty. In Haven's Realty, the injury, in fact, was to a tester who never wanted to rent the apartment, had no intention. Therefore, there could be no harm whatsoever to that person from being told that they could not rent the place on racial discriminatory grounds. And yet that was a sufficient injury, in fact, because of the violation of the statutory right. What about Tritchell? In what sense, Your Honor? I'm sorry, what case were you just citing to me? Haven's Realty. Okay, but the Supreme Court expressly cited in TransUnion Tritchell for the importance of downstream consequences. I believe that's an 11th Circuit decision. Yeah, but it was validated by the Supreme Court. They cited it and quoted it and said there should be these downstream consequences. So what we should disregard it because it's an 11th Circuit decision. It's not binding on us, even though the Supreme Court cited it positively. Well, so in TransUnion, the aspect that you're referring to was dicta. TransUnion did not itself. You know what? I am just a little piddly old federal circuit here. I am not in the business of disregarding Supreme Court dicta, especially when there's nothing contrary to it. Well, Haven's Realty is contrary. Not a Supreme Court case. It is a Supreme Court case, Your Honor. What Supreme Court case, what do you think is contrary to the notion that there have to be downstream consequences? Haven's Realty. And what makes you think that's contrary? In Haven's Realty, the plaintiff, the only evidence they had of the injury, in fact, was that they sent a tester to an apartment building and said, can I rent this apartment? And the tester was told no because of your race, effectively. And this evidence constituted a violation of the statute against racial discrimination in leasing. And the evidence showed that that tester had zero intention of ever renting the apartment. Therefore, there could have been no downstream consequence. It's someone who didn't even want the thing. But that was a sufficient injury, in fact. And the cases, the multiple circuit courts that have found that downstream consequences are not required, which we cite in our briefing, have all cited back to Haven's Realty and explained that a requirement of downstream consequences could not reconcile with Haven's Realty, which remains binding Supreme Court precedent. And therefore, that aspect of transunion should not be followed as a holding of the court requiring downstream consequences. I would like to... And you cited the agents' realty case to us in your brief. I'm sorry. Could you repeat that? Agents' realty? No, Your Honor. It is Haven's, H-A-V-E-N-S. Okay. And if you would like the citation. I'm just looking for the citation in your brief. It is 445 U.S. I'm just looking for H-A-V-E-N-S. Yes. 445 U.S. 363 is discussed in our reply brief at pages 9 through 10. Your Honors, with respect to certain past decisions like ESIP Series 2 and other cases that have cited to it, none of those decisions were directed to an actual challenge to the board's failure or refusal in a final written decision to determine whether or not certain entities were real parties in interest. All of those cases were directed to situations where the decision to institute itself was challenged. And 312A3 has repeatedly been relied on by this court in order to review and either approve or reverse the board's findings with respect to the final written decision. 312A3 shares the exact same preamble language that is relevant to us that appears in 312A2. Therefore, the notion that violations of 312A subsections, including 2, are reviewable in the context of the final written decision is established by this court's cases as to 312A3. One of those is cited in the Qualcomm decision that we put in as supplemental authority. In that case is the Conleaky-Phillips v. Google case. And in that case, this court said that the board erred in relying on a ground. Yes, Your Honor. In terms of going back and looking at these regulations and putting them together, there are two sets of interests, the in-stream and the downstream. You've suffered no harm with regard to the in-stream. Well, we have suffered. I disagree, Your Honor. Well, you were actually the names of the people who could bunch with you probably were told to you. You had an opportunity to go look around. The PTO looked around, and they found no reason to name them for in-stream purposes. For in-stream purposes. But that is not the limit of our rights under the statute, and therefore our rights have not been met. Right, right. But you do have downstream consequences. I agree with that. You have admitted in your briefing that you are presently injured by those. You have no present injury. I would not phrase it that way at all, Your Honor. But you said in your reply brief you admitted that you can cure all this downstream. No, Your Honor. We actually explained why there would be significant problems and it might be impossible. For instance, the evidence at issue is subject to a protective order, and everything we've gathered has to be destroyed within six weeks of the final disposition of this case. So then we would have to recreate that evidence through third-party discovery. Did you make that clear in your brief, though? Yes, I did, Your Honor. So this appears— Because in your reply brief at 25, you concede that downstream in the future proceeding you can be protected. I don't agree with that, Your Honor. In your reply brief starting at page 12, we start to talk about the fact that the protective order in this case, as well as the need for a subpoena and a motion under very tight timelines in future IPRs, would provide significant impediments, if not make it impossible, to adequately resolve the issue of real parties and interests in future proceedings for the first time. Okay, I think we better go on and hear from opposing counsel. Thank you, Your Honor. Ms. Oliver? Please proceed. May it please the Court, Angela Oliver on behalf of Unified Patents. I'll focus on the standing issue. Here, the RPI issue has no bearing on this case, and the only harms that Dolby has alleged are purely speculative. Okay, before you get to that, though, get to why this is or is not an informational right akin to public citizen or Akins or Spokio or any of those. Why is this not an informational right? Sure, this is not an informational right because of the type of statutory claim at issue. In Akins and in public citizen, those were both public disclosure type laws where the government has said the public is entitled to certain information in certain context. One was related to the Federal Elections Campaign Act. One was the Federal Advisory Committee Act. So those are kind of public interest issues where disclosure is required. The AIA is nothing like that. This arises in the context of proceedings that are focused on patentability. This is not a public disclosure law. And the structure of how it is set up is also different than those cases. So in Akins and in public citizen, there is a statutory cause of action for the thing there, for the information. So there is a right for an individual to bring an action to seek information. That's the entire purpose. Here, this in the AIA context, even if you assume that 312A2 gives you a right to have the RPI issue adjudicated, which is not correct, but assuming that for standing purposes, that only arises within the context of an IPR proceeding. There is no freestanding right to that information. There's no freestanding cause of action like there is in Akins and public citizen. And in fact, you would probably say, I think that 314, in fact, goes the opposite direction by saying that the kinds of things that you would normally see articulated in the context of the institution decision are beyond the scope of review. So rather than creating a special right where someone could bring a cause of action, 314, in fact, closes the door on reviewability. That's exactly right, yes. And so we think that solves the question of whether or not the informational injury cases apply. They simply don't fit here. But even if they were to apply, there's also the issue of downstream consequences. Well, what do you do with his Havens argument? I think that has the same kind of structural distinction. In Havens Realty, there was a specific cause of action provided for an individual who received false information based on racial discrimination. That is a cause of action that was available to anyone who brought that. That was the entire purpose of that provision there. So again, there's kind of a structural difference. There is no freestanding cause of action here that you would— Is there anything to the idea that nobody's arguing that Unified is, in fact, an RPI, i.e., the false information thing? I mean, we have an absence of full disclosure, but we don't have false disclosure. Do you understand? In Havens, there was actually false disclosure. There wasn't. It violated that particular statutory provision, which prohibited false disclosure. Here, the statutory provision would not be similar to that. But in any event, petitioners and counsel are required to make those certifications in good faith and with a duty of candor and based on evidence. And so there's no indication here that this was a false assertion. But again, I don't think that would be similar to Havens Realty just because that was the core of that statutory provision in that case. I think there's also an additional distinction based on Havens Realty. This admittedly was not discussed in that case in Havens Realty or mentioned in TransUnion. But I do think when TransUnion talked about downstream consequences, they cited a public citizen and they cited Aikens, the information— excuse me, the public disclosure type cases. Havens Realty is really kind of a unique context of a discrimination case. In that case, it was racial steering. In some of the more recent circuit cases post-TransUnion, it's been an issue of another protected class, ADA protections. And so I think there's kind of a distinct harm that exists in that context, a dignitary harm or a stigmatic harm. Again, this was not addressed in those cases. But I think it does show that those kinds of cases are unique in the harm that exists there. And that's simply not the kind of harm we have here. So getting back to TransUnion, do you think TransUnion stands for the proposition that in order for someone like the appellant here to establish standing, they have to establish, one, 312A2 is a public disclosure law. And then in addition, the appellant has to prove that it is suffering some downstream consequences? I think that's correct. After TransUnion, TransUnion is very clear and says an asserted informational injury that causes no adverse effect cannot satisfy Article III. But again, I don't think the court needs to reach that downstream consequences question because of the earlier question that this simply doesn't fit into the informational injury context. Those are freestanding rights that the entire purpose is created for receiving information, particularly in the context of government information, federal elections information, federal advisory committee information. That's just fundamentally different than what we have in the AIA. 312A2 only exists within this proceeding, and so that's a separate reason, without reaching the downstream consequences issue, why this court should hold that informational injury does not work here. What about your adversary's allegation here in the library that there are downstream consequences, that he can't get access, he can't break through sealed documents that are at the board, and he's going to have to have extensive discovery? Your Honor, if hypothetical future litigation ever does arise, Dolby would be able to fully litigate the RPI issue in that case. For example, if Company A is involved in that case down the road. Company A, if they had any relation to Unified, they would have the documents that would be relevant to that issue. So this is not necessarily an issue of third-party discovery. My understanding is that whatever is in the super-secret confidential documents, our attorneys are aware of it, but the companies are not. Is that correct? These are marked attorney's eyes only. Okay. So how are they supposed to figure out in some future matter whether this is a party? Is it just through interrogatory? You expect them to, in an interrogatory, say, did you have any involvement in that IPR? Is that the mechanism? What is the mechanism by which they would uncover? So attorney's eyes only, so they don't even have a hint of who the people are that they think might be involved. And documents are going to be destroyed six weeks after or whatever. So how is it you expect them to do that? Sure. In a future case, they would have a concrete entity that they're dealing with, right? Company A in future litigation. Just to start with, in the future, can Dobey rely on or in any way use the information that's under seal here? I don't believe so. I would have to double-check the protective order, but I think the answer is no because it has to be destroyed. Everything that they learned about Benign that were volunteered here, they have to pretend like never existed? Well, they didn't learn about it, right?  Counsel only. Yeah, they didn't learn about it. And this is very common in litigation, that documents that are produced during litigation cannot be used to a party's advantage in future litigation. That's a fairly common type of protective order protection. But going back to Your Honor's question regarding logistically, how would they do this? They would have a company that they would be focused on. Was the deposition that was given by the Unified Patents guy in this case sealed? Portions of it, yes. But the portions that are not sealed are available to Dobey? Yes. To Your Honor's question, in future litigation, there would be different mechanisms depending on the forum. So in the context of district court, there's certainly a lot of flexibility with respect to interrogatories and broader discovery. In the PTAB, there is also third-party discovery available. There's a way to access subpoenas through district courts even in the PTAB case. And so there would be options for the party to simply ask. We see this prior proceeding. Were you involved in this proceeding? And so there would be mechanisms to handle that down the road that would not necessarily require third-party discovery. But if they needed it, that would be available through the boards and the district court's mechanisms. Your Honor, I see that I've run into the government's time here. Unless the court has further questions, I will sit down. Thank you, Ms. Oliver. Thank you. Mr. Kennedy? Kevin Kennedy for the government. As my friend just articulated, Dolby's challenge fails for multiple threshold reasons. First and foremost, Dolby does not have standing here as the prevailing party below. They prevailed in defense of their patent claims. And the portion of the board's proceedings below that they complain of, the board's approach to the real party's interest determination, does not continue to injure them. They are free to litigate that dispute in any future proceeding. Second, though, that real party's interest determination is under 312A2, a provision that this court has already recognized, is one that is closely related to institution, and therefore also precluded from review under 314D. Dolby's primary rejoinder to that is that the board reiterated its institution stage finding regarding real party's interest in its final written determination. But the Supreme Court has rejected precisely that argument in Thrive. It noted that there the board also reiterated an institution stage finding in its final determination, but because the relevant provision governed only institution, which 312A2 does, it's a condition on considering a petition to institute review. The challenge was nonetheless barred by 314D. I welcome this court's questions. Why do you think Congress put 312A2 into the statute? What was its purpose? What's the point of it? Well, the purpose of interparty, so I think you'd have to understand it in the broader context, the purpose of the statutory scheme as a whole, which is to facilitate an efficient up-down determination as to patentability. And so 312A2 in that context allows the board to know whether it has authority to institute review. And so 312A2 informs the board of the real party's interest so it can figure out whether any time bar or estoppel provision is implicated. And so in that context, that's why the real party's interest. But there's an additional benefit in play, right? This is the one that the appellants want, which is to know what parties downstream are going to be estopped should the patent owner become victorious through the IPR. And so what is happening here seems to create a piecemeal litigation on this. I mean, I don't know why it's not just all being rolled up by the agency in the first instance to just actually get to the bottom of who are the true real parties in interest in this proceeding. Well, so if the board was required in every case to resolve many questions about real parties in interest, those are fact-intensive, resource-intensive determinations to make. And here, as we've been discussing— But if the law requires it, then the law requires it. So I will get there as well. The law does not require it. I mean, if you look at 315A1 and B1, it says the board shall not institute review if there is one of these bars. Nothing in 315E says the board must resolve real parties in interest determinations before reaching a final determination as to patentability. And if you look at the provision that governs final determinations as to patentability, nothing there says that the board has to resolve those. Well, yeah, but that's because it's got to be in the petition, right? Under 312A, requirements of a petition, a petition filed under 311 may be considered only if the petition identifies all real parties in interest. Agreed. I mean— I mean, you're telling me that they don't in some other proceeding at the end of the day talk about who the real parties in interest are as they're relevant. They were supposed to do it at the gatekeeper. So I think that only underscores the point that this type of challenge is barred by 314D because it's only relevant to this gatekeeping institution decision. So, again, and this court has already decided in ESIP Series 2 that this is precisely the type of procedural provision that governs institution that is barred by 314D. Yeah, but what if one of these board judges had a conflict? I mean, that seems really sketchy to me. Like, what—I mean, I don't want to decide cases I have a stake in. Why are you putting these board judges in the position of deciding cases when maybe their entire retirement portfolio is in that company? That's an awkward situation. It comes out later. I mean, it's entirely speculative that anything like that is implicated here. And there are procedures to unearth financial conflicts. The parties can request financial disclosures. Well, how can they do that? They don't know who the real parties in interest are. Getting the financial disclosures of the judges is irrelevant if you don't know who the parties in interest are. So, again, I don't think there's any concrete allegation here that— How could there be? You don't know who the parties are. If they don't know who the parties are, how can they make a concrete allegation? If they made a concrete allegation under those circumstances, I'd probably sanction them with frivolous because they don't know who the parties are. But that's exactly the point. They want to know who the parties are. Now, in this case, it might be one of these things where you get away with it because they won. They won. So, I hate to say it, but if one of the board judges, it turns out, has a bunch of stock in one of the real parties in interest and shouldn't have been deciding it, it would only be to their detriment right now because they won on the merits. But what if they lost? What if they lost this case on the merits? I feel like this might be a whole different case. I think surely they'd have downstream potential consequence arguments, don't you? If they lost on this case. Well, I think those cases will arise before this court. This court doesn't need to reach cases where hypothesizing whether if they lost, here they prevailed. Again, I think that's why they do not have standing. And there will be cases where the party loses and they can raise their 312A2 challenge in that case. Would they have standings? If they lost on patentability, they would certainly have standing to challenge the patentability determination. But also the real party in interest question. You know, I think they would have standing to appeal and then there would be a question of whether they have sufficiently alleged whether they're injured by, you know, you'd have to look at the facts of that case to determine whether they've sufficiently alleged a concrete, non-speculative injury. There was an opinion a couple years ago from this court where we vacated a district court decision because it turned out that the district court judge owned some stock. And even though the district court judge ruled against that company to which the judge's wife owned stock. And we said that's still not good enough under ethics requirements that it needed to go back. I don't remember the name of the case. Do you? I don't remember the name of that case. I will also note that in Shark Ninja, the precedential decision that sets the board's policy here, that the panel confirmed that it did not have a conflict of interest. And so I think under the precedential decision, the board can pursue that. I don't understand that argument. Well, here we've been discussing that this isn't the proper, here they prevailed on their patentability challenge. And so it seems highly speculative that there was any conflict of interest here, at least one that harmed them. And so in a future case, I think the board can, you can determine whether the future case presents the question. How does the board cure the question of the possible need for a judge to refuse? How does the board cure it? Yeah, I mean, just take this particular case. How do the three judges who ruled on this IPR know whether they should recuse? I mean, I think they're certainly, you know, they can look at the, you know, they can consult their own financial disclosure. But how do they know what to compare it to? They haven't been given the nine names, right? That's my understanding, yeah. Okay, so let me back up and just first ask, if indeed a ALJ, on the PTAB court, owned stock in a company that was involved in the IPR, that would be wrong, right? Aren't there rules at the patent office that tell the judges they can't sit if they have a financial interest? I'm not, I assume so, but I'm not prepared with the exact citation to that. But the patent office would not want judges to be sitting on cases in which they have financial interest, correct? I think that's right. So then how do you solve the problem? How do these judges, right, know about this problem? Do we expect them to come forward, but they don't know the nine names? I'm not sure about the answer to all of these questions, but again, I think regardless of how the board has chosen to structure its approach to 312A2 questions, they're nonetheless barred by 314, the appeal of those. There was none of the interest involved in this demish. Well, so that, so all these questions... You have to be certain that the IPR is fair and was not run by somebody who had a financial interest in it. Yeah, so all these questions go to standing, but again, I think there's another threshold barrier to this court's review, which is 314D. Well, they also go to whether or not the precedential holding that you're using as the model for solving the NIPR consequences is faulty because it doesn't deal with this problem. It might go to whether the precedential decision is faulty, but again, even if they don't have standing and even if this court has issues with the board's precedential decision, the board's precedential decision is precluded from review under 314D because it's one that governs the board's approach to institution. This court has already held as much in 312A2, I mean, in ESIP Series 2, and there's really... Yeah, in Shark Ninja, though, the one problem you have is it looks to me like the APJs in that case were given the names of the unnamed RPIs and they expressly determined that they didn't have a conflict with those RPIs and that was put on the record. And that seems like... I mean, if that's actually in the Shark Ninja opinion, doesn't it seem like that's a necessity? How do we know that occurred here? There's no evidence that occurred here. So there hasn't been any challenge that the error below is that they didn't follow Shark Ninja. So again, I don't think that's an argument that's... Well, no, they've expressly argued, though, that one of the problems is that one of the board judges deciding this could have had a conflict. Well, the argument is that's one of the grounds for standing. But again, none of that goes to the question of whether this court can review it under 314D. So I think the 314D bar is one that this court has many cases on. And under all of those cases, this squarely falls on the side of the type of institution-related decision that is precluded from review. Well, but the difference is the cases that are dealing with 314D in the RPI setting deal with a circumstance where the patent office actually made a decision, yes or no, about the RPI and then that was on challenge. This is a different question, which is whether or not the patent office can refuse to make that determination. So this precise issue here wasn't decided by our earlier precedents. So does it matter that the difference here is the board is saying, oh, we just don't need to look at it? Yeah, it doesn't matter. I mean, in all of these courts... You've been saying so, but why not? I'm going to try to explain myself. So in all of these courts' cases, they look at whether the provision governs institution. And so it's not the desired result, what specifically remedy that they want. It's whether the provision that they're invoking is one that governs institution. That's the Supreme Court's language. And I'll also say, I mean, if Dolby got what it wanted with respect to real parties and interest requirement, the only effect would be that the board couldn't institute review until it settled all of these questions. It would not go on to have any effect on how the board conducted review once it was instituted. It would still reach a final determination... Unless the review was conducted by judges who own stock in the company. Yes. More than to minimus amounts, anyway. I mean... What's your answer to that? So you're saying that it could alter the eventual outcome by, like, allowing prejudiced judges... Some judge who voted his pocketbook. I think that's... I mean... Okay. Sorry. Thank you. I should also say, my friend has helped me out here, the board had all the name of the alleged RPIs here. The board what? The board had the name of the alleged RPIs here. How do we know that? It's appendix 3525 in the confidential briefing. Okay, so the board had the names of the nine. Did they make a statement as they did in footnote 10 in Shark Ninja that there were no conflicts? They didn't make that statement in their determination. But, again... I don't... I mean... I should say... I mean, again... I think you're good. Yeah, okay. Thank you.  Your Honors, on the issue of the conflicts, the board did have the names of the nine entities that were alleged to be RPIs. The board made no finding whatsoever as to potential conflicts with those nine entities. The board treated those nine entities as effectively irrelevant because it did not make a finding as to whether or not they were real parties in interest. You don't know that. What we don't know is whether maybe the board judges looked at those nine and maybe they all confirmed that they have no conflicts. So, even if they are real parties in interest, it's not an issue, but we don't know. We don't know, and we don't have... Well, there's a presumption of regularity that applies to all government agencies. They follow the rules unless there's reason to think not. In my experience in reviewing all of these cases, the board, I understand that in Shark Ninja, they expressly considered conflicts even when they didn't make their RPI finding. But in my experience, they look at conflicts if it's a party or a real party in interest, not before that. And so, they would not, in my experience, from what I've seen in the cases, consider conflicts with respect to alleged real parties in interest. And there's no evidence that they did here. Now, if I could address the issue of 312A2 and whether it only governs institution, it does not only govern institution. Again, as I discussed, the language is consider. The word is consider in the statute. And this court has recognized in the context of 312A3 that the obligations of 312A apply to the board's final written decisions, not only its institution decisions. And the Conlicke-Phillips v. Google case that's discussed in Qualcomm v. Apple is one example of that. There are many examples of that in this court's jurisprudence. The only effect here is not on institution. It's also on what happens post-institution. Obviously, we've been discussing the conflicts potential implication. But there are also all of the... That's not post-institution. That's in the institution. I'm sorry to say that. Post-institution, but within the patent office. Post-institution within the patent office from the moment that the trial is instituted through the conclusion of the proceeding. And again, this case is very similar to SAS, so much so that the point was made that we won on the merits, which we did, but that was also the case in SAS. They also won on the merits, but they had a separate statutory violation challenge to the board's failure and the director's failure to adhere to the text of 318A. On the APJ conflict issue, it seems like there's a chicken or the egg problem here. On one hand, you're raising the possibility of an APJ conflict could easily be seen as a speculative injury. We don't know if these people own stock and to what extent that could have influenced them. We have no idea. So in that sense, it's a speculative injury. On the other hand, your concern is, well, you can't get access to that information. You can't prove it's a non-speculative injury because you're not getting a hold of... I guess another question is, you personally know the nine companies in question, and then you could go and get the financial disclosure forms for these APJs. Isn't that right? I think in theory it's been raised by the other side that there's a procedure for that.  There's a means of requesting and getting that information, and then you personally in that way could then make an assessment of whether or not any of the APJs on this panel own the stock in any of these nine companies, right? Your Honor, even accepting all that, then we would have to accuse APJs of having a conflict with respect to parties that we're asking them to find to be real parties in interest. So that's a very strange position to put the litigant in before the court is to tell the court, the panel, we think you have a conflict with respect to entities that we're asking you to recognize as parties to the proceeding, but that you haven't recognized as parties to the proceeding yet. And so that's not the way Congress set up the balance and the symmetry of the IPR process. The Patent Office itself has recognized that identifying conflicts is one of the core functions of the real party in interest requirement, and that's discussed in our reply brief at page 16, where we cite to the consolidated trial practice guide. And so it's not our burden to have to decide whether there could be a conflict as to entities that we're also asking the board to recognize to be real parties in interest and then to raise that chicken and egg problem under that setting, Your Honor. It's notable that the board has repeatedly enforced the requirement of identifying all real parties in interest post-institution. For example, in the Askeladden case, the board required the identification of TCH as a real party in interest after institution. And in the Atlanta gas case that we cite, the real party in interest did not... Is that because it affected 315? I don't know the facts of that case. Maybe there was an ongoing litigation and they needed to know. It's not strictly tied to that. It's simply because 312A2 has been recognized by the board as creating an ongoing obligation, and that's also under 42.8. Well, they sure don't think so, because they stood up today and said otherwise. So you may be able to point to one or two cases where an identification occurred later, but that's not indicative of a PTO practice, especially one inconsistent with the precedential decision they've issued. Your Honor, the conflict between their conduct is this. They argue before this court that 312A2 is only directed to institution. And yet, in practice, they require under 42.8, 37 CFR 42.8 A and B, that the petitioner update any changes in its real parties in interest within 21 days. And in cases like Atlanta gas and Askeladden, which we have cited, they require the petitioner to name new real parties in interest that are identified later in the proceeding, including ones that only became real parties in interest after institution. And so this argument that they present for this court to draw on the appeal bar of 314D is not correct, even under their own practice. And it's not correct under SAS Institute, and it's not correct under Conleaky-Phillips v. Google and numerous other decisions of this court that recognize that 312A provisions, including A3, create an ongoing obligation and duty on the board all the way through final written decision. Okay. I thank all counsel. This case is taken under submission. Thank you, Your Honor.